146

LOUIS ROSENFIELD *v.* UNITED STATES (No. 3355) [1]

United States Court of Customs and Patent Appeals, November 3, 1930

*Comstock & Washburn (J. Stuart Tompkins* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General *(Thomas J. Canty,* special attorney, of counsel), for the United States.

[Oral argument October 13, 1930, by Mr. Tompkins and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

One hundred and fifty violins and five cellos, imported from England by appellant, were entered, by two entries, as artistic antiquities, free of duty, under paragraph 1708 of the Tariff Act of 1922, and were assessed for duty at $1 each and 35 per centum ad valorem under paragraph 1443 of the same act.

The importer protested in each entry, claiming them to be free of duty as artistic antiquities or as objects of art of educational value under said paragraph 1708.

The court below overruled the protest and in its decision said:

We find nothing in the record as made up to support the claim for free entry. It further appears that the regulations (article 423, Customs Regulations of 1923) have not been complied with in that the affidavit of the seller is not in the proper form and not made by one whom the record discloses has some knowledge of the origin and nature of the articles, as to their history and whether they are over 100 years old. See *Atlantic Exchange Bank & Trust Co.* v. *United States,* T. D. 42372.

[1] T. D. 44361.

A motion for rehearing was also denied.

The report of the collector, in each entry, shows that the action was taken upon the answer to the protest by the appraiser, which, in part, in each entry, is as follows:

Claim is made that certain violins were entered and reputed to be over 100 years old under paragraph 1708, as artistic antiquities or objects of educational value. Upon examination of this entry it was found that the affidavit of the shipper or seller did not meet with the requirements of article 423, C. R. 1923.

It seems that A. Woolcot, of London, England, signed both foreign declarations as seller of the merchandise, when, as a matter of fact, A. Woolcot was only the packer. He had no knowledge of the value or history of said violins and cellos and in that way the declarations are faulty and do not comply with customs regulations.

At the trial in the court below, the sole issue was whether or not the customs regulations had been complied with. It was admitted by the attorney for the Government that the merchandise consisted of artistic antiquities over 100 years old. Without this admission we might have some difficulty in arriving at the conclusion, upon this record, that the articles were artistic antiquities within the meaning of the free list paragraph. See *Mayers, Osterwald & Mulhfeld* v. *E. F. Bendler and United States*, 18 C. C. P. A. (Customs) 120, T. D. 44093; and *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386. The case can be disposed of without consideration of this question.

Paragraph 1708 reads as follows:

PAR. 1708. Works of art (except rugs and carpets), collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced more than one hundred years prior to the date of importation, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

The regulations adopted and promulgated by the Treasury Department, in pursuance of the authority of said paragraph, in part follow:

ART. 423. *Artistic antiquities.* * * * There shall be attached to the invoice filed upon entry a certificate of the foreign seller or shipper before the American consul at the place of shipment in substantially the following form:

——— ———,
——— ———, 19—.

I, ——— ———, do hereby certify that I am the ——— of certain works of art, viz, ———, covered by consular invoice No. ———, certified before the American consul at ———, on the ——— day of ———, 19—; that the said ——— were acquired by me from ——— on the ——— day of ———, 19—; and I further declare that ———.

I, ——— ———, consul of the United States at ———, do hereby certify that the above declaration was subscribed and sworn to (or affirmed) before me by ——— on this ——— day of ———, 19—, and that the statements therein contained are true, to the best of my knowledge and belief.

——— ———,
*U. S. Consul.*

An affidavit by the owner on Customs Form 3343 shall also be filed on entry.

The affidavit of the owner, signed by an agent or attorney, can not be accepted, but a declaration of the foreign seller or shipper, executed by an agent competent to declare to the value and facts of the invoice, should be accepted as a sufficient compliance with the regulations. When the value of an importation does not exceed $100 the certificate of the foreign seller or shipper will not be required. A bond for the subsequent production of either the owner's affidavit or the shipper's declaration within six months may be taken on entry. (Customs Form 7551.)

Certificates and affidavits bearing on the age and character of such importations shall be transmitted by the collector to the appraising officer. The findings of such officer shall be clearly stated in his return upon the invoice.

Accompanying the entry papers is the affidavit by the owner on Customs Form 3343, the correctness of which is not questioned. The sufficiency of the attempted compliance with the first requirement of the regulation is the matter in dispute here. The "Declaration in Connection with Artistic Antiquities" on Form No. 254 in each entry, was signed before the United States consul by one A. Woolcot, who styled himself the *seller* of the merchandise. In the declaration (at the bottom of which we find the following sentence, "I further declare that the above particulars are true"), the goods, in one entry, are listed, and certain information appears in substantially the following form:

| Description of article | Name of producer | Date and place of production | Name and residence of persons from whom acquired | Date when so acquired |
|---|---|---|---|---|
| 67 violins | Unknown | Germany, eighteenth century | Public sale, London and Paris. | During 1925 and 1926. |
| 10 violins | do | Italy, eighteenth century | | |
| 18 violins | do | France, eighteenth century | | |
| 11 violins | do | England, eighteenth century | | |
| 1 cello | do | do | | |

In the other entry the declaration is identical except as is shown by the following:

| Description of article | Name of producer | Date and place of production | Name and residence of persons from whom acquired | Date when so acquired |
|---|---|---|---|---|
| 3 violins | Unknown | England, eighteenth century | Public sale, London and Paris. | January to June, 1926. |
| 2 celli | do | do | | |
| 11 violins | do | France, eighteenth century | | |
| 18 violins | do | Italy, eighteenth century | | |
| 1 cello | do | do | | |
| 12 violins | do | Germany, eighteenth century | | |
| 1 cello | do | do | | |

It will be noted that the appraiser found affirmatively that "A. Woolcot was only the packer," although the certification stated that he was the seller. Just how the appraiser learned of this fact is not

disclosed. Acting upon such information, the collector assessed the merchandise with duty under paragraph 1443.

After protest and at the trial, the importer, Rosenfield, testified in part as follows:

Direct examination by Mr. TOMPKINS:

Q. Mr. Rosenfield, are you the importer of the merchandise here in question?—A. Yes, sir.

Q. Has that been your life's work, the collection of old violins?—A. Yes, sir.

Q. About how many years have you been engaged in that line of work?—A. I should say for the last 30 years.

Q. Did you personally purchase all the violins in question?—A. Yes, sir.

Q. Please state briefly to the court how you made the purchase of these instruments.—A. By going around to different dealers in musical instruments and private parties, wherever I heard of any instruments to be sold.

Q. Where?—A. England, principally London.

Q. Do you know about the business of Mr. A. Woolcot?—A. Yes, sir.

Q. What is it?—A. He is a packer and shipper of works of art.

Q. How long has he been engaged in that line of work?—A. All his life.

Q. In what capacity did he act in this matter for you?—A. Simply packing the instruments and acted as my agent.

Q. Did he act as the shipper?—A. Yes, sir.

Q. He attended to shipping all the violins in question?—A. Yes, sir.

Q. Did he sign himself on the consular invoice?—A. Yes, sir.

Q. Did he assist you in the collection of these violins?—A. Yes, sir.

Q. Did he have knowledge as to the age of the instruments in question?—A. He had some knowledge. Every one was looked over between us, and was recommended to me as such.

Q. Did he make any statement to you as being satisfied that they were over one hundred years old?—A. Yes, sir.

Cross-examination by Mr. LAWRENCE:

Q. Did you purchase all these violins?—A. Yes, sir.

Q. Where were you when you did the purchasing?—A. London.

Q. From whom did you buy?—A. I bought them from Dykos, Chonate, Brunoe, Hum, Beher, Wilson, Valler, and Wallace.

Q. What is the business of the people whose names you have mentioned?—A. They are regular dealers in violins.

Q. In London?—A. Yes, sir.

Q. How did Mr. Woolcot figure in the transaction? You say you bought from Brunoe, Wallace, and others. Did you buy direct from them?—A. Yes, sir; and then we got them together and took them to Mr. Woolcot's place to pack them.

Q. What kind of a place does Woolcot have?—A. A regular office, business for that purpose.

Q. Has facilities for packing merchandise?—A. Yes, sir.

Q. Does he buy or sell violins?—A. No, sir.

Q. Did Brunoe, Wallace, and the others send the violins to Woolcot?—A. No, sir; I gathered them up myself.

Q. How did they get to Woolcot's?—A. I took a taxi and put some of them in it and he also sent a wagon around to gather them together.

Q. How large a place is Woolcot's?—A. He has two floors, about, I should judge, about half the size of this room.

Q. Fifty by thirty would you say?—A. Probably so.

Q. Does he use these rooms for storing and packing merchandise?—A. Yes, sir.
Q. How many people does he employ?—A. About three, I should say.
Q. Is that the principal business in this partnership?—A. Yes, sir.
Q. To pack merchandise for shipment?—A. Yes, sir.
Q. He don't carry anything for sale?—A. Not that I know of.
Q. And he does not buy?—A. No, sir.

Without objection the following letter and affidavit by A. Woolcot were introduced as part of the evidence:

SEPT. 29TH, 1927.

Louis Rosenfield,
208–210 *Shukert Building,*
*Kansas City, Missouri.*
Dear Sir: We enclose affidavit duly sworn and are very sorry you have so much trouble over your shipment.

Have never known such a query arrive before when Consular invoice is in order.

Our previous interviews with Consular Officials were only asked if we were sellers of violins to you, and replied no, only packers, shippers for you.

Yours faithfully,

A. Woolcot.
A. H. W.

Great Britain and Ireland,
*London, England, July 30, 1926.*
*Consulate General of the United States of America, ss:*
I, A. Woolcot, do hereby swear (or affirm) that I executed the consular invoice and certificate of antiquity attached thereto, both being later filed by Mr. Rosenfield with Kansas City Entry No. 48A.

I further declare that I executed the consular invoice as "shipper" and that it was my intention to also execute the certificate of antiquity as "shipper" as I merely acted as assembling and packing agent for Mr. Louis Rosenfield. I did not intend to declare myself as the "seller" of the merchandise.

Consular invoice number 28371. 30 July/26.

A. Woolcot.

It seems to us that the question is narrowed down to the determination of the sufficiency of the certificate of A. Woolcot. Is it a compliance with the customs regulations involved? The reasonableness of the regulation is not questioned. Both sides have treated the declaration as if it contained the word "shipper" instead of "seller." The regulation requires a certificate from the "foreign seller or shipper." Shall the word "shipper," as used in the regulation of the Treasury Department, be given such a broad meaning as to include one having no more interest in or knowledge of the merchandise than merely that involved in the physical function of placing together, packing and starting the same *in transitu?*

We do not think that such a *shipper* was within the contemplation of the framers of the regulation, since it is obvious that he could not furnish the collector with information which the regulation indicates is necessary. We do not decide just what constitutes a shipper

within the meaning of the regulation, but we hold that the word is not meant to embrace and does not reasonably embrace within the scope of its meaning one who performed no functions other than those performed by A. Woolcot.

The shipper ordinarily would be the seller or the purchaser. An agent for the seller or buyer, who made the sale or purchase, might also be the shipper and be in far better position to comply with the spirit of the customs regulations than would the actual seller or owner.

A comparison of the declaration of A. Woolcot and the form prescribed in the regulation is convincing of the fact that Woolcot did not possess or purport to possess the information which the regulation required. He at no place in his declaration states that he acquired the goods from any source but states that the name and residence of persons from whom the goods were acquired was "public sale, London and Paris."

In *United States* v. *Thomas*, 3 Ct. Cust. Appls. 142, T. D. 32385, in speaking of the affidavits required to be filed in connection with artistic antiquities, the court said:

We think the office of these affidavits is mainly to show the good faith of the importer in making the claim of antiquity and to *afford to the customs officers an effective basis for investigation as to that claim, if they desire to make it,* so that such officers may determine whether or not a prima facie case of antiquity has been made. [Italics ours.]

This decision was rendered under the Tariff Act of 1909. The regulations adopted in pursuance of the authority granted in that act differ materially from those adopted under the act of 1922, but as far as the controverted portion of the instant importation is concerned, it would seem to us that the requirement that there should be filed upon entry "A certificate of the foreign seller or shipper before the American consul at the place of shipment in substantially the following form," etc., was for the same purposes as were required by the affidavits under consideration in the *Thomas* case.

Taking this view of the case, would the certificate under consideration executed by one who did not purport to know the facts and in which we think essential facts are missing answer the requirement of the regulation? We think not.

The regulation under consideration, in referring to the *affidavit* and the *declaration*, expressly states that "The affidavit of the owner signed by an agent or attorney can not be accepted," but that "a declaration of the foreign seller or shipper, executed by an agent competent to declare to the value and facts of the invoice, should be accepted as a sufficient compliance with the regulations." If the *agent of the shipper* before he is qualified to make the declaration

must know the facts, should not the *shipper*, if he makes the declaration, also possess at least as much knowledge of the facts as the agent? The so-called shipper in this case states in his affidavit that he merely acted as "assembling and packing agent" for the purchaser, who, no doubt, was the real shipper.

The collector properly assessed the merchandise with duty and the judgment of the United States Customs Court is *affirmed*.

LENROOT J., specially concurs.